UNITED STATES of America,
Plaintiff-Appellee,

v.

FLAGLER COUNTY SCHOOL DIS-
TRICT et al., Defendants,

James O. Craig, Supt. of Schools, School
Board of Flagler County, Defendant-
Appellant.

No. 71-2323.

United States Court of Appeals,
Fifth Circuit.

March 29, 1972.

Stanley D. Kupiszewski, Jr., DeLand,
Fla., for defendant-appellant; James O.
Craig, pro se.

Jerris Leonard, Asst. Atty. Gen.,
Brian K. Landsberg, Atty., U. S. Dept.
of Justice, Washington, D. C., John L.
Briggs, U. S. Atty., John D. Roberts,
Asst. U. S. Atty., Jacksonville, Fla., Da-
vid L. Norman, Asst. Atty. Gen., Roder-
ick N. McAulay, Atty. Dept. of Justice,
Washington, D. C., for plaintiff-appellee.

Before JOHN R. BROWN, Chief
Judge, and INGRAHAM and RONEY,
Circuit Judges.

JOHN R. BROWN, Chief Judge:

As a last gasp in the struggle against
desegregation in the Flagler County
(Florida) School District, Superintend-
ent James O. Craig, now alone and un-
aided by the school board, appeals *pro se*
from the District Court's order enjoin-
ing the operation of racially segregated
public educational facilities and requir-
ing the immediate implementation of a
unitary school system, including compli-
ance with the semi-annual reporting pro-
vision of Singleton v. Jackson Municipal
Separate School District, 5 Cir., 1970,
426 F.2d 1364.[1]

In the long march from Mansfield[2]
this Court has seen, heard, or heard of
everything[3]—everything, that is, until
today.

Here the District Court, after finding
that Flagler County was operating a
dual school system, ordered the immedi-
ate implementation of a unitary school
system on August 7, 1970. The School

1. The United States instituted the present
action nearly six months after the entry
of a consent decree providing a desegrega-
tion plan for the county, because the first
semi-annual report required by that de-
cree failed to include statistical data
relating to the racial composition of stu-
dent bodies and faculties.

2. Jackson v. Rawdon, 5 Cir., 1956, 235 F.
2d 93, cert. denied, 352 U.S. 925, 77 S.Ct.
221, 1 L.Ed.2d 160.

3. See, e. g., Hernandez v. Driscoll Consoli-
dated Independent School District, 2 Race
Rel.L.R. 329 (S.D.Tex., January 11,

1957). There, the school district tried to
circumvent an order of the State Super-
tendent of Public Instruction, promulgated
as a result of a court order in Delgado
v. Bastrop Ind. School Dist., Civil No.
388 (W.D.Tex., June 15, 1948). The Su-
perintendent's order had permitted segre-
gation of Mexican Americans in the first
grade *only*—as a means of combatting a
prevalent language deficiency. Driscoll
Independent School District's coup was
to keep Mexican American students in
the first grade for the first four years of
their educational careers.

District resisted, arguing that it did not know what the term "race" or "ethnic origin" contemplated. It contended that it could not assure that Negro students were not being discriminated against because it did not have a Congressional definition of the term "Negro." What began as an ingenius quandry soon became disingenuous when HEW offered these definitions:

*Negro:*

persons considered by themselves, by the school or by the community to be of African or Negro origin.

*Oriental:*

persons considered by themselves, by the school or by the community to be of Asian origin.

Similar guidelines were announced for identifying American Indians, Spanish Surnamed Americans and All Others. Thereupon, the School District blithely filed a Supplemental Report identifying all teachers and students in the District as "Orientals," since they were so "considered by the school." Therefore, it reasoned, there was no discrimination, since there was only one race in the entire school district (i. e., "Orientals") and it could not be found to be in noncompliance with Constitutional standards.

With no surprise to anyone the District Court summarily rejected this absurdity and to the credit of the School District and the good sense of its members, the Board consented to a decree, avoiding any further embarrassment by urging that contention in this Court. The School Superintendent, who was named as a party-defendant in the suit below as a matter of form, appeals singly *pro se* from the District Court's order.

■ His argument is that he cannot enforce the District Court's order because it contains no definition of what is a Negro and therefore, he contends, the order is vague and uncertain. Justice Douglas's statement in Tijerina v. Henry, 1970, 398 U.S. 922, 90 S.Ct. 1718, 26 L.Ed.2d 86, sufficiently answers that argument—"One thing is not vague or uncertain, however, and that is that those who discriminate against members of this and other minority groups have little difficulty in isolating the objects of their discrimination." The record indicates that in the past the School District has apparently had no difficulty identifying Negroes for the purposes of segregating them. For desegregation they can be identified with similar ease.

■ Appellant's other argument, that he does not know how to implement the District Court's mandate that discrimination in the system be rooted out completely by use of non-discriminatory assignment of students (as the Trial Court suggests, on the basis of alphabetical order) is without any redeeming merit.

Whether viewed as frivolous under our Rule 20, which it clearly is, or on the merits—or more accurately, the total lack of merits—the appeal utterly fails.

Affirmed.